**SO ORDERED.**

**SIGNED this 17th day of November, 2020.**



Dale L. Somers
United States Chief Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In re: | |
| Pixius Communications LLC, | Case No. 19-11749-11 |
| Debtor. | |
| WISPer Ventures Leasing LLC, | |
| Plaintiff, | Adv. No. 19-5110 |
| v. | |
| Pixius Communications LLC, Robert Hanson, Jay S. Maxwell, individually and as trustee of the Jay S. Maxwell Trust, James R. Vosburgh, individually and as trustee of the Vosburgh Family Revocable Trust, Carol L. Murray, individually and as trustee of the Carol L. Murray Living Trust Lies Investments, LP, LV Properties, John Does 1-10, Jane Does 1-10, ABC Entities 1-10, | |
| Defendants. | |

## Memorandum Opinion and Order
## Granting Motion to Dismiss and Motion to Stay Discovery, and Requiring Brief in Response to Request for Attorney's Fees

Plaintiff WISPer Ventures Leasing LLC ("WVL") filed a state court action in Arizona against Debtor/Defendant Pixius Communications LLC ("Pixius") and various additional defendants, stating multiple claims based on alleged breaches of certain subordination agreements. After early procedural maneuvering, Pixius was dismissed from the action and this Court issued an order confirming its subject-matter jurisdiction over the remainder of the claims.

One of the defendants, Jay S. Maxwell, who was sued in both his individual capacity and as trustee of the Jay S. Maxwell Trust, filed a motion to dismiss the breach of contract claims against him in his individual capacity, arguing that only the Jay S. Maxwell Trust was involved in the transaction at issue and that because both counts against him individually are predicated on a breach of contract and the complaint does not allege a contract between Mr. Maxwell and WVL, the complaint against him fails to state a claim under Federal Rule of Civil Procedure 12(b)(6). Mr. Maxwell also moves to stay the discovery against him and asks for his attorney's fees.

The Court grants Mr. Maxwell's motion to dismiss. Under Arizona

statute § 14-11010(A) and (B) and the case law interpreting that statute, Mr. Maxwell is shielded from personal liability on the contract entered into in his fiduciary capacity as trustee, and WVL has alleged no tortious conduct for which Mr. Maxwell is personally at fault. In addition, because the Court dismisses the claims against Mr. Maxwell individually, the motion to stay the discovery directed at him individually is also granted.

Mr. Maxwell argues that if his motion to dismiss is granted he should be considered the successful party in an action arising out of a contract and awarded reasonable attorneys fees under Arizona statute § 12-341.01. Alternatively, Mr. Maxwell moves for attorney's fees under Arizona statute § 12-349 (attorney's fees for "unjustified actions"). WVL should file a response brief to Mr. Maxwell's request within thirty days, addressing why the Court should not award fees as requested.

## I.     Factual and Procedural Background

The following facts are alleged in WVL's complaint. On June 1, 2015, Pixius and WVL entered into a master lease agreement. As a material inducement for WVL to enter into the master lease agreement with Pixius, six subordination agreements were executed, one each with the following: Robert G. Hanson, Jay S. Maxwell Trust, Vosburgh Family Revocable Trust,

Carol L. Murray Living Trust, Lies Investments LP, and LV Properties, GP.[1] The subordination agreements refer to these individuals/entities as a "Pixius Investor." The subordination agreement with the Jay S. Maxwell Trust is signed by "Jay S. Maxwell, Trustee." The subordination agreements are to be governed and construed in accordance with Arizona law.

Pursuant to the subordination agreements, each of the Pixius Investors agreed that any amounts payable by Pixius to the Pixius Investors would be subordinate to the obligations of Pixius under the master lease agreement. Each of the Pixius Investors also agreed not to accept any payments from Pixius, and Pixius agreed not to make any payments to the Pixius Investors, until all amounts due to WVL under the master lease agreement were satisfied. Pixius agreed to "hold in trust anything of value received" and owing to the Pixius Investors. Pixius agreed that any monies due to the Pixius Investors would be delivered to WVL by Pixius and applied to reduce the amount due to WVL under the master lease agreement.

On August 2, 2017, certain individuals and entities,[2] which WVL

---

[1] The copies of the subordination agreements attached to WVL's complaint are nearly illegible. Mr. Maxwell has included in his reply a copy of the subordination agreement at issue in his motion to dismiss (Doc. 74 Exh. A). If WVL relies on the subordination agreements in any future matters in this case, clear copies of the subordination agreements must be provided.

[2] WVL calls these individuals/entities the "CrossFirst Debtors," and they include five of the six Pixius Investors. WVL states that they include: "Defendants

4

alleges includes "Defendant Maxwell," not differentiating between Mr. Maxwell and the Jay S. Maxwell Trust, executed a promissory note in favor of CrossFirst Bank for $4,500,000. In breach of the subordination agreements, Pixius then made payments on the debt to CrossFirst Bank for the benefit of those individuals/entities. WVL alleges not less than $1,007,820.96 was paid by Pixius on the debt.

WVL also alleges that the Pixius Investors made loans to Pixius, and that in breach of the subordination agreements, Pixius made (and the Pixius Investors accepted) payments on account of those loans. Regarding Mr. Maxwell, WVL alleges that "not less than $156,911.74" was paid to "Defendant Maxwell," again not differentiating between Mr. Maxwell and the Jay S. Maxwell Trust. No dates are given for any of these loans or payments.

WVL alleges that Pixius is in default of its obligations under the master lease agreement, and that its obligations have been accelerated. On July 23, 2019, WVL gave notice to the Pixius Investors and to Pixius of multiple alleged defaults under the subordination agreements, and made demand on the Pixius Investors to cure the defaults. The defaults under the subordination agreements were not cured, and on August 5, 2019, WVL filed

---

Hanson, Maxwell, Vosburgh, Murray, and Lies," but there are no documents attached to the complaint supporting that allegation.

its complaint in Arizona state court. As of that date, Pixius was indebted to WVL under the master lease agreement for $1,163,547, along with incurred fees, costs, and expenses.

The state court complaint states four counts:

- Count 1: Only as to Pixius, for breach of contract, based on the payments to the Pixius Investors on the alleged insider loans.
- Count 2: Only as to the Pixius Investors, for breach of contract, based on payments to the Pixius Investors on the alleged insider loans in breach of the subordination agreements.
- Count 3: Only as to Pixius, for breach of contract, based on the payments made on the CrossFirst Bank debt.
- Count 4: Only as to the parties involved in the CrossFirst Bank transaction, for breach of contract, based on the payments made on the CrossFirst Bank debt in breach of the subordination agreements.

The complaint seeks damages and attorneys' fees and costs. Specifically, as to "Defendant Maxwell," under Count 2, the complaint seeks "not less than $156,911.74 and any such additional sums that may have been paid to by Pixius to or for the benefit of f Defendant Maxwell since June 1, 2015 [sic throughout]." As to Count 4, the complaint seeks joint and several liability for damages of not less than $1,007,820.96 and any additional sums that may have been paid to CrossFirst Bank since June 1, 2015 for the benefit of the Investors.

The complaint states that the "Jay S. Maxwell Trust" is a revocable trust, and that Jay S. Maxwell is a trustee, trustor, and beneficiary of the

6

trust. The complaint alleges that Mr. Maxwell is liable "both in his individual capacity and in his capacity as trustee" of the Jay S. Maxwell Trust.

Shortly after the state court complaint was filed, on September 17, 2019, Mr. Maxwell filed a motion to dismiss the complaint against him. About the same time, and before the state court acted on that motion to dismiss, Pixius filed its Chapter 11 bankruptcy petition. The state court action was stayed, and Pixius removed the action to this Court.

WVL responded to the removal with two pleadings: (1) a notice of dismissal, without prejudice, of defendant Pixius from the suit,[3] and (2) a motion to remand the suit back to state court, or in the alternative, for abstention. After full briefing and argument, the Court issued an order denying the motion to remand or abstain. The Court concluded that, at minimum, "related-to" jurisdiction gave the Court subject matter jurisdiction over the case,[4] remand based on equitable grounds was not warranted, and

---

[3] In a separate adversary proceeding between Pixius and WVL, Adversary No. 20-5065, the parties entered an agreed order establishing certain documents related to the master lease agreement as the documents establishing a secured transaction between Pixius and WVL, and that the value and amount of that claim would be determined by the Court pursuant to specified procedures in Pixius's main bankruptcy case.

[4] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Amended Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy Judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code,

7

the Court would not exercise permissive abstention. The relevant parties have now fully briefed Mr. Maxwell's motion to dismiss and the Court heard oral argument on the same.

## II. Analysis

### A. Governing Standards of Law

Federal Rule of Bankruptcy Procedure 7012(b) incorporates Federal Rule of Civil Procedure 12(b) into all adversary proceedings, and Rule 12(b)(6) permits motions for dismissal of a complaint for "failure to state a claim upon which relief can be granted." To determine whether a claim has been stated under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[5] A claim is facially plausible if the factual content plead, as opposed to legal conclusions made, allow a court to draw the reasonable inference that the stated claim is present.[6]

---

effective June 24, 2013. D. Kan. Standing Order 13-1 *printed in* D. Kan. Rules of Practice and Procedure (March 2018).
    [5] *Williams v. Meyer (In re Williams)*, 438 B.R. 679, 683 (10th Cir. BAP 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).
    [6] *Id.* (internal quotations omitted); *see also Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

8

## B. Dismissal of Complaint as to Mr. Maxwell under Federal Rule of Civil Procedure 12(b)(6)

As noted above, only Counts 2 and 4 of WVL's complaint state claims as to Mr. Maxwell. Specifically, both counts allege a breach of contract (the subordination agreement) based on payments to the Pixius Investors by Pixius. Mr. Maxwell moves for dismissal of the complaint against him, arguing that because both Counts 2 and 4 are predicated on a breach of contract, and the complaint does not allege a contract between Mr. Maxwell and WVL, the complaint against him fails to state a claim. The parties agree their dispute is governed by Arizona law.

To state a claim for breach of contract, a plaintiff has the burden of proving the existence of a contract, breach of the contract, and resulting damages.[7] To prove the existence of a valid contract, the plaintiff must show "an offer, acceptance of the offer, and consideration," and that the parties "intended to be bound by the agreement."[8]

WVL purports to allege a contract between itself and Mr. Maxwell. In

---

[7] *Chartone, Inc. v. Bernini*, 83 P.3d 1103, 1111 (Ariz. Ct. App. 2004).
[8] *Goodman v. Physical Res. Eng'g, Inc.*, 270 P.3d 852, 855 (Ariz. Ct. App. 2011). We note that there is no allegation of an implied contract, which requires evidence of a prior course of dealing and other circumstances from which a fact-finder could infer a contract. *Id.* (citing cases for proposition that an implied contract can be found from the acts and conduct of the parties and the circumstances surrounding a transaction).

9

its complaint, WVL claims it entered into the subordination agreement with "Defendant Maxwell," and then defines Defendant Maxwell as both the Maxwell Trust and Mr. Maxwell individually. The actual contract attached as an exhibit to the complaint, however, is expressly only between WVL and the "Jay S. Maxwell Trust," signed by Mr. Maxwell as the "Managing Member."[9]

WVL also states in its complaint that "the Maxwell Trust is a revocable trust and Jay S. Maxwell is a trustee, trustor, and beneficiary of the Maxwell Trust. Accordingly, Mr. Maxwell is liable both in his individual capacity and in his capacity as trustee of the Maxwell Trust."[10] And in response to Mr. Maxwell's motion to dismiss pointing out that Mr. Maxwell individually is not a party to the contract, WVL argues its breach of contract action rests on trustee liability imposed by statute, namely Arizona state statute § 14-11010(B). Nowhere in WVL's complaint is § 14-11010(B) mentioned.

Section 14-11010 is part of the Arizona Trust Code, and is titled "Limitation on Personal Liability of Trustee." The section states, in its entirety:

> A. Except as otherwise provided in the contract, a trustee is not personally liable on a contract properly entered into in the trustee's fiduciary capacity in the course of administering the trust if the trustee in the contract disclosed the fiduciary capacity.

---

[9] Doc. 74 Exh. 1 pp.1, 3.
[10] Doc. 1 p.8.

10

> B. A trustee is personally liable for torts committed in the course of administering a trust or for obligations arising from ownership or control of trust property, including liability for violation of environmental law, only if the trustee is personally at fault.
>
> C. A claim based on a contract entered into by a trustee in the trustee's fiduciary capacity, on an obligation arising from ownership or control of trust property or on a tort committed in the course of administering a trust may be asserted in a judicial proceeding against the trustee in the trustee's fiduciary capacity, whether or not the trustee is personally liable for the claim.

Both parties argue that § 14-11010 controls the outcome of this Court's decision; albeit in different directions. WVL bases Mr. Maxwell's liability on § 14-11010(B), concluding that its complaint should go forward so it can prove Mr. Maxwell's "personal liability" in violating the subordination agreement. WVL argues that because Mr. Maxwell, as the trustee of the Jay S. Maxwell Trust, accepted funds in breach of the subordination agreement, then Mr. Maxwell's personal fault has been alleged.[11] Mr. Maxwell argues instead that

---

[11] Specifically, WVL points to language in the complaint that "[t]he Subordination Agreements obligated the [Pixius Investors] not to accept payments from Pixius until all amounts due to [WVL] under the [master lease agreement] were paid in full." Doc. 1-1 p.14 ¶ 35; *see also* Doc. 1-1 p.10 ¶ 14 ("Pursuant to the Subordination Agreements, each of the [Pixius Investors] agreed not to accept any payments from Pixius until all amounts due to [WVL] under the [master lease agreement] were satisfied."); Doc. 1-1 p.11 ¶ 22 ("In breach of the Subordination Agreements, Pixius has made payments to the [Pixius Investors], and the [Pixius Investors]] have accepted payments on account of the Insider Loans. . . ."); Doc. 1-1 p.17 ¶ 47 ("The Subordination Agreements obligated the [Pixius Investors] not to accept anything of value from Pixius until all amounts due to [WVL] were paid in full."); Doc. 1-1 p.18 ¶ 51 ("Had the CrossFirst Debtors fulfilled their obligations under the Subordination Agreements, the Debt would have been reduced . . . .").

11

§ 14-11010(A) absolutely insulates a trustee from liability based on contract, while § 14-11010(B) dictates that for claims sounding in tort, a trustee may possibly be liable, but only for obligations arising from ownership or control of trust property.

The Arizona state courts have addressed § 14-11010 in depth only once, in a recent unpublished opinion from the Court of Appeals. In *Bayley v. Weiger*,[12] a trust listed and sold a piece of real estate, and after purchasing, the buyers filed a state court complaint alleging various contract and tort claims.[13] The buyers sued the seller both as trustee of the trust and individually.[14] Regarding the seller's motion to dismiss the breach of contract claims stated against her individually, the Arizona Court of Appeals stated:

> A trustee is not personally liable on a contract that the trustee entered into in his or her trustee capacity if the trustee disclosed the fiduciary capacity. A.R.S. § 14–11010(A). A trustee is not personally liable for torts committed while administering a trust unless "the trustee is personally at fault." A.R.S. § 14–11010(B).
>
> The complaint fails to state a claim for which relief can be granted against [the seller] individually on the contract claims. . . . The home purchase contract listed the Trust as the seller and was signed "Ralph J. Weiger Trust." The [property disclosure statement] also listed the Trust as the seller and was signed "Ralph J. Weiger." . . . [B]ecause the home purchase contract and [property disclosure statement] disclose the Trust as the seller and

---

[12] No. 1 CA-CV 19-0409, 2020 WL 1527411 (Ariz. Ct. App. Mar. 31, 2020).
[13] *Id.* at *1.
[14] *Id.* Shortly after the transaction at issue was completed, the original trustee of the trust died and was replaced by a successor trustee.

12

the trustee's fiduciary capacity, [the seller] cannot be personally liable on the contract. *See* A.R.S. § 14–11010(A). Therefore, with regard to the contract claims, the complaint fails to allege facts sufficient to state a claim for which relief can be granted against [the seller] individually.[15]

The Arizona Court of Appeals then addressed the seller's motion to dismiss the tort claims brought against her in her individual capacity, stating:

> Likewise, the complaint fails to allege facts sufficient to state tort claims for which relief can be granted against [the trustee] individually. The complaint alleges that [the trustee] had an obligation to disclose known defects to [the buyers] under the [the disclosure statement] and failed to disclose those known defects. The complaint does not allege facts to support any personal obligation by [the trustee] to disclose known defects in the home or that she was personally at fault for failing to disclose any known defects. *See* A.R.S. § 14–11010(B). Therefore, the trial court properly granted [the trustee's] motion to dismiss the claims against her individually.[16]

The Arizona Court of Appeals decision directly rejects WVL's argument in this case. Mr. Maxwell cannot be personally liable for breach of the subordination agreement entered into by him as trustee of the Jay S. Maxwell Trust. The subordination agreement disclosed the Jay S. Maxwell trust as the contracting party and the complaint does not allege facts to

---

[15] *Id.* at *2.

[16] *Id.* at *3. Another Arizona Court of Appeals case, *Four Points Properties, LLC v. Johnson*, 330 P.3d 360 (Ariz. Ct. App. 2014), without citing A.R.S. § 14-11010, held that an individual who was the signatory to a contract as a representative could not be held personally liable when the contract specified that it was an agreement with a third-party owner. *Id.* at 367.

13

support the trustee's personal fault under § 14–11010(B).

The Ninth Circuit has also addressed § 14-11010, and reached the same conclusions as the Arizona Court of Appeals. In *Biltmore Assocs., LLC v. Twin City Fire Ins. Co.*,[17] the Ninth Circuit addressed whether personal liability could be imposed for liabilities incurred while acting as a representative for a trust.[18] Citing § 14-11010(B), the Ninth Circuit held that a "trustee is personally liable only if he is personally at fault for the obligation. Otherwise, the trustee is liable only in his representative capacity."[19] Citing § 14-11010(A), the Ninth Circuit also held: "A trustee is personally liable for obligations arising from ownership or control of trust property only if the trustee is personally at fault."[20]

The case law supports Mr. Maxwell's motion to dismiss. The plain

---

[17] 572 F.3d 663 (9th Cir. 2009).
[18] *Id.* at 676.
[19] *Id.*
[20] *Id.* (internal emphasis removed). A federal district court in Arizona has also interpreted the Arizona statute, although it was focused on whether a breach of contract claim could be brought against a trustee, not the situation herein where the court is asking whether a breach of contract claim could be brought against an individual when the contract is entered into by the trustee. In *Irwin Collateral, Inc. v. Peters & Burris, LLC*, No. CV-09-605-PHX-SMM, 2011 WL 13183109 (D. Ariz. May 19, 2011), the court noted that § 14-11010(C) permits parties to bring an action against a trustee in his or her official capacity, for agreements signed on behalf of a trust with any judgment collectible out of the trust's assets. *Id.* at *5. The court stated: "If the trustee had the power, by law or in the trust agreement to enter into the contract, and was acting in his fiduciary capacity, then a claim may be asserted against the trustee in her fiduciary capacity." *Id.* at *6.

reading of § 14-11010(A) is that a breach of contract claim cannot be maintained against an individual trustee where, as here, the trustee entered into the contract expressly as the trust, and signed the contract as the trustee of that trust. As a result, Mr. Maxwell cannot be personally liable on the contract, and WVL's breach of contract claims against him must fail. Further, WVL has not alleged "facts to support any personal obligation," or to show Mr. Maxwell's "personal fault" thereon that would impose liability under § 14–11010(B). The paragraphs from the complaint relied upon by WVL at oral argument do nothing more than allege a breach of the subordination agreement by the signatories to those agreements.

The Arizona statute is modeled after § 1010 of the Uniform Trust Code. The Comment to that Uniform Trust Code section reinforces the case law cited above. It states that subsection (A) governs contracts that "are properly entered into in the trustee's fiduciary capacity," while subsection (B) "addresses trustee liability arising from ownership or control of trust property and for torts occurring incident to the administration of the trust. Liability in such situations is imposed on the trustee personally only if the trustee was personally at fault, either intentionally or negligently."[21] There

---

[21] Unif. Trust Code § 1010 cmt. Subsection (B) refers to a trustee's liability to third parties; not a trustee's personal liability to beneficiaries for a breach of trust. *See Deborah Dereede Living Trust dated December 18, 2013 v. Karp*, 831 S.E. 2d

are simply no facts alleged as to Mr. Maxwell in WVL's complaint that could support a cause of action under § 14-11010(B) for his intentional or negligent torts. Mr. Maxwell is not a contracting party to the subordination agreement, is shielded from liability by § 14-11010(A), and no facts have been pled that could arise to a cause of action against him personally under § 14-11010(B). The complaint states no facts upon which Mr. Maxwell had any obligation to personally perform under the subordination agreement.

WVL cites case law that it purports to be to the contrary, but the cases are not persuasive as WVL candidly acknowledged at oral argument. For example, in *SunTrust Banks, Inc. v. Robertson*, the court did grant the plaintiff leave to amend a complaint to add a breach of contact claim against a trustee in his personal capacity, as WVL claims.[22] But the court also held that it was granting the motion to amend because 1) the applicable contract in that case was entered eight years prior to the state's adoption of the Uniform Trust Code, making the common law rule applicable that a trustee *was* subject to personal liability for contracts made in the course of administering the trust and 2) even if the Uniform Trust Code had applied, the plaintiff had pleaded sufficient facts to state a claim for personal liability

---

435, 440-41 (C.C. Ct. App. 2019) (discussing Uniform Trust Code § 1010 and its distinction for a trustee's personal liability to beneficiaries for a breach of trust).
    [22] No. 2:09cv197, 2010 WL 11569411, at *4 (E.D. Va. Mar. 9, 2010).

that was not frivolous on its face.[23] Another example cited by WVL is *Adler v. Althouse*, where the court upheld a judgment against a trustee in his individual capacity for a trust's breach of contract, but the court had also made a finding that the trust was the "alter ego" of the individual, and the individual's conduct was fraudulent.[24] Again, these case are inapplicable to the facts at hand.

WVL argued in its sur-reply briefing on the motion to dismiss and at oral argument that it may seek leave of the Court to amend its complaint to add tort claims against Mr. Maxwell. But potential future amendments cannot change what is currently in front of the Court, and under Rule 12(b)(6), WVL's current complaint fails to state a claim upon which relief may be granted. The motion to dismiss filed by Mr. Maxwell, seeking dismissal of the claims against Mr. Maxwell in his individual capacity, will be granted.

## C. Additional Issues

Mr. Maxwell moved to stay discovery efforts directed at him individually pending a ruling on his motion to dismiss. Because the Court dismisses the individual claims against Mr. Maxwell, the Court grants that motion to stay the individual discovery. Mr. Maxwell also filed his motion to

---

[23] *Id.*
[24] *Adler v. Althouse*, No. B153158, 2002 WL 31151626, at *12 (Cal. Ct. App. Sept. 27, 2002).

stay discovery in the main bankruptcy case of Pixius,[25] and should withdraw his motion from that case.

Finally, Mr. Maxwell argues in his motion to dismiss that if his motion is granted, he should be considered the successful party in an action arising out of a contract and awarded reasonable attorney's fees under Arizona statute § 12-341.01. Alternatively, Mr. Maxwell moves for attorney's fees under Arizona statute § 12-349 (attorney's fees for "unjustified actions"). WVL should file a response brief to Mr. Maxwell's request for attorney's fees within thirty days, addressing why the Court should not award fees as requested.

### III. Conclusion

Mr. Maxwell's motion to dismiss the individual claims against him is granted. Because the Court has dismissed the individual claims against Mr. Maxwell from this litigation, Mr. Maxwell's motion to stay discovery is also granted. Mr. Maxwell should withdraw the motion to stay discovery that he filed in the main bankruptcy case associated with this adversary proceeding. Finally, WVL should file a response brief to Mr. Maxwell's request for attorney's fees within thirty days, addressing why the Court should not award fees as requested.

---

[25] Case No. 19-11749, Doc. 458.

**It is so Ordered**.

# # #