SO ORDERED.

SIGNED this 19th day of January, 2021.



_____
Dale L. Somers
United States Chief Bankruptcy Judge
_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In re: | |
| Pixius Communications LLC, | Case No. 19-11749-11 |
| Debtor. | |
| WISPer Ventures Leasing LLC, | |
| Plaintiff, | Adv. No. 19-5110 |
| v. | |
| Pixius Communications LLC, *et al.*, | |
| Defendants. | |

## Order Granting Motion for Attorney's Fees

Plaintiff WISPer Ventures Leasing LLC ("WVL") filed a state court action in Arizona against Debtor/Defendant Pixius Communications LLC ("Pixius") and various additional defendants, stating multiple claims based

on alleged breaches of certain subordination agreements. After early procedural maneuvering, Pixius was dismissed from the action and this Court issued an order confirming its subject-matter jurisdiction over the remainder of the claims.

One of the defendants, Jay S. Maxwell, who was sued in both his individual capacity and as trustee of the Jay S. Maxwell Trust, filed a motion to dismiss the breach of contract claims against him in his individual capacity. Mr. Maxwell also asked for his attorney's fees, under a state statute awarding fees to the successful party in an action arising out of a contract and under a state statute awarding fees for "unjustified actions."

The Court granted Mr. Maxwell's motion to dismiss in a prior order, and asked for additional briefing on the issue of attorneys fees. The Court now concludes that Mr. Maxwell was the successful party in the action arising out of a contract, and should be awarded reasonable attorneys fees under Arizona statute § 12-341.01.

## I. Factual and Procedural Background

The complaint in this case alleges that on June 1, 2015, Pixius and WVL entered into a master lease agreement. As a material inducement for WVL to enter into the master lease agreement with Pixius, six subordination agreements were executed, one each with the following: Robert G. Hanson,

Jay S. Maxwell Trust, Vosburgh Family Revocable Trust, Carol L. Murray Living Trust, Lies Investments LP, and LV Properties, GP. The subordination agreements refer to these individuals/entities as a "Pixius Investor." The subordination agreements are to be governed and construed in accordance with Arizona law.

WVL alleges that that the Pixius Investors made loans to Pixius, and that in breach of the subordination agreements, Pixius made (and the Pixius Investors accepted) payments on account of those loans. WVL also alleges that on August 2, 2017, certain individuals and entities[1] executed a promissory note in favor of CrossFirst Bank for $4,500,000, and in breach of the subordination agreements, Pixius then made payments on the debt to CrossFirst Bank for the benefit of those individuals/entities.

WVL alleges that Pixius is in default of its obligations under the master lease agreement, and that its obligations have been accelerated. On July 23, 2019, WVL gave notice to the Pixius Investors and to Pixius of multiple alleged defaults under the subordination agreements, and made demand on the Pixius Investors to cure the defaults. Its demands unsatisfied, on August 5, 2019, WVL filed a complaint in Arizona state court. Then on

---

[1] WVL calls these individuals/entities the "CrossFirst Debtors," and according to WVL, they include five of the six Pixius Investors: "Defendants Hanson, Maxwell, Vosburgh, Murray, and Lies."

September 13, 2019, Pixius filed its Chapter 11 bankruptcy petition. The state court action was stayed, and Pixius removed the action to this Court.[2]

As noted above, the Court in a prior Order addressed a motion from Mr. Maxwell to dismiss the complaint against him in his individual capacity. Mr. Maxwell argued that because both counts against him in WVL's complaint were predicated on a breach of contract and the complaint did not allege a contract between Mr. Maxwell and WVL (only the Jay S. Maxwell Trust was a party to the subordination agreement), the complaint against him failed to state a claim under Federal Rule of Civil Procedure 12(b)(6). The Court granted Mr. Maxwell's motion to dismiss, concluding that the plain reading of Arizona statute § 14-11010(A) is that a breach of contract claim cannot be maintained against an individual trustee where, as here, the trustee entered into the contract expressly as the trust, and signed the contract as the trustee of that trust. The Court therefore concluded that WVL's breach of contract claims against Mr. Maxwell must fail.

In his motion to dismiss, Mr. Maxwell argued that if his motion was

---

[2] Pixius has since been dismissed from this adversary, and in a separate adversary proceeding between Pixius and WVL, Adversary No. 20-5065, the parties entered an agreed order establishing certain documents related to the master lease agreement as the documents establishing a secured transaction between Pixius and WVL, and that the value and amount of that claim would be determined by the Court pursuant to specified procedures in Pixius's main bankruptcy case.

4

granted, he should be considered the successful party in an action arising out of a contract and awarded reasonable attorney's fees under Arizona statute § 12-341.01. Alternatively, Mr. Maxwell moved for attorney's fees under Arizona statute § 12-349 (attorney's fees for "unjustified actions"). The Court concluded that WVL had not adequately responded to Mr. Maxwell's request and ordered WVL to file a response brief to Mr. Maxwell's request for attorney's fee, addressing why the Court should not award fees as requested.

## II. Analysis[3]

Mr. Maxwell asks for attorney's fees under Arizona statute § 12-341.01. Section 12-341.01 states:

> A. In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees. . . . This section shall not be construed as altering, prohibiting or restricting present or future contracts or statutes that may provide for attorney fees.
>
> B. The award of reasonable attorney fees pursuant to this section should be made to mitigate the burden of the expense of litigation to establish a just claim or a just defense. It need not equal or relate to the attorney fees actually paid or contracted, but the

---

[3] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Amended Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy Judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective June 24, 2013. D. Kan. Standing Order 13-1 *printed in* D. Kan. Rules of Practice and Procedure (March 2018). The Court has previously concluded that, at minimum, "related-to" jurisdiction gives the Court subject matter jurisdiction over the case. Doc. 35.

5

> award may not exceed the amount paid or agreed to be paid.
>
> C. The court and not a jury shall award reasonable attorney fees under this section.

An award of attorney's fees under this Arizona statute is permissive, not mandatory.[4]

Certainly a contract—here the subordination agreements—was the crux of the cause of action against Mr. Maxwell.[5] Both claims made against Mr. Maxwell directly arose from the subordination agreement as breach of contract claims. In addition, Mr. Maxwell is a represented party who will presumably compensate his attorney for that representation.[6] An affidavit from Mr. Maxwell's counsel indicates that Mr. Maxwell "has either paid or agreed to pay for all legal fees, related expenses, and taxable costs incurred"

---

[4] *Wagenseller v. Scottsdale Mem'l Hosp.*, 710 P.2d 1025, 1049 (Ariz. 1985), *superseded by statute on other grounds as recognized by Chaboya v. Am. Nat'l Red Cross*, 72 F. Supp. 2d 1081, 1092 (D. Ariz. 1999).

[5] *See Harris v. Maricopa County Superior Court*, 631 F.3d 963, 974 (9th Cir. 2011) ("The proper inquiry for determining whether a claim arises out of a contract is whether the claim could not exist but for the breach or avoidance of contract. It is well established, moreover, that a defendant is entitled to attorney's fees if the plaintiff's claims arise out of an alleged contract that is proven not to exist." (internal quotations omitted)); *Keystone Floor & More, LLC v. Arizona Registrar of Contractors*, 219 P.3d 237, 240 (Ariz. Ct. App. 2009) (stating that fees may be awarded under § 12-341.01 "when a contract is the cause or origin of the dispute" or "an action in which a contract was the main factor causing the dispute" (internal quotations omitted)).

[6] *Fields v. Elected Officials Ret. Plan*, 459 P.3d 503, 505 (Ariz. Ct. App. 2020) (stating that to recover fees under § 12-341.01, a successful party must "show it entered an attorney-client relationship and assumed a genuine financial obligation to compensate the attorney").

in connection with the lawsuit.[7]

WVL disputes only the question of whether Mr. Maxwell has been a "successful party" under Arizona statute § 12-341.01. The determination of a successful party is discretionary.[8] There are two tests the Arizona courts use to determine whether there is a successful party: the "net judgment rule" and the "totality of the litigation" test.[9]

Using the net judgment rule, "the party that obtains a judgment in excess of any setoff or counterclaim awarded to the other party is the successful party."[10] The net judgment rule does not, therefore, apply when neither party has received a monetary award.[11]

Under the totality of the litigation test, the Court must use its discretion to look at all the claims made to determine which party had success.[12] Courts look at factors such as which claims are the major issues in the litigation, the relief requested on those claims, and which party had success on the motions made in the matter.[13]

---

[7] Doc. 136 Exh. 1 p. 3 ¶ 11.
[8] *Med. Protective Co. v. Pang*, 25 F. Supp. 3d 1232, 1238 (D. Ariz. 2014).
[9] *Id.* at 1239.
[10] *Id.* (internal quotations omitted).
[11] *Id.* ("Here, neither party has received a monetary award on any of the competing claims and counterclaims. . . . Thus, the net judgment rule is inapplicable.").
[12] *Id.*
[13] *Id.*

There can be no question that Mr. Maxwell was successful at having the breach of contract claims made against him dismissed, and it is irrelevant that the Court did not reach the merits of the claims made and dismissed them under Rule 12(b)(6).[14] WVL argues that because it intends to file an amended complaint, adding new claims against Mr. Maxwell individually, this time sounding in tort, that Mr. Maxwell's request for fees is premature. But case law interpreting Arizona statute § 12-341.01 is clear that just because additional claims or different claims may be made—or even if the same claims may be made in a different forum—it does not change the conclusion that a party has been successful on the claims actually asserted in the forum when assessing § 12-341.01.[15] Regarding this fee statute, the Ninth Circuit has said that fees may be awarded at any point "during the course of litigating an action arising out of a contract."[16] The fact that WVL may file an

---

[14] *Med. Protective Co. v. Pang*, 740 F.3d 1279, 1283 (9th Cir. 2013) (stating that "Arizona appellate courts have repeatedly held that an adjudication on the merits is not a prerequisite to recovering attorney's fees under Section 12–341.01," and citing cases (internal quotations omitted)); *Britt v. Steffen*, 205 P.3d 357, 359 (Ariz. Ct. App. 2008) (holding that a defendant is a "successful party" under § 12-341.01 when it obtains a dismissal, without adjudication on the merits); *Altfillisch Constr. Co. v. Torgerson Constr. Corp.*, 586 P.2d 999, 1001 (Ariz. Ct. App. 1978) (money judgment is not necessary to be a "successful party" under § 12-3401.01).

[15] *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. 757BD, LLC*, No. 12-15524, 2014 WL 807055, at *1 (9th Cir. Mar. 3, 2014) (holding that a defendant was a "successful party" under § 12-341.01 when it obtained dismissal of a federal action, even when the plaintiff could reassert its claims in state court).

[16] *Med. Protective Co.*, 740 F.3d at 1284.

amended complaint stating claims against Mr. Maxwell based in tort is irrelevant.[17]

As a result, the Court finds that Mr. Maxwell is a successful party, and that his request under § 12-341.01 is appropriate. The Court next considers whether it should grant a fee award.[18] The Arizona Supreme Court has enumerated six "standards" for determining whether fees should be granted under the statute. Those standards are:

> (1) whether the unsuccessful party's claim or defense was meritorious;
> (2) whether the litigation could have been avoided or settled and the successful party's efforts were completely superfluous in achieving the result;
> (3) whether assessing fees against the unsuccessful party would cause an extreme hardship;
> (4) whether the successful party prevailed with respect to all of the relief sought;
> (5) whether the legal question presented was novel and whether such claim or defense have previously been adjudicated in this jurisdiction; and
> (6) whether the award would discourage other parties with tenable claims or defenses from litigating or defending legitimate contract issues for fear of incurring liability for substantial amounts of attorney's fees.[19]

---

[17] *See, e.g.*, *Wagenseller*, 710 P.2d at 1048 (concluding that a successful party need not receive a final judgment at the conclusion of an appeal process, and that a successful party includes parties attaining success on interim orders).

[18] The award of fees under this statute is a two-step process: (1) eligibility for fees, and then (2) whether the fees should be awarded under the statute. *Id.* at 1049.

[19] *Id.* (citing *Associated Indem. Corp. v. Warner*, 694 P.2d 1181, 1184 (Ariz. 1985)). A fee award is not an absolute after eligibility is determined, but the Arizona Supreme Court has stated that denying fees to a successful party when the

9

These standards favor the award of fees to Mr. Maxwell.

The unsuccessful party—WVL—relied on a reading of Arizona statues in its defense to Mr. Maxwell's motion to dismiss that—as the Court noted in its prior Order—was not supported by any case law. The Arizona statute is itself based on the Uniform Trust Code (and therefore, not a novel area of law), which also provided no support for WVL's position. Again, WVL points out that *if* it is successful at attaining leave to file an amended complaint, and *if* it is successful at prosecuting its tort claims against Mr. Maxwell individual, then Mr. Maxwell *could* be liable for the same relief sought in its original complaint.[20] But Mr. Maxwell's efforts have resulted in the narrowing of this dispute. The claims made against him based on breach of contract have been dismissed, even if additional, different claims and relief thereon is subsequently granted. In addition, WVL is a corporate entity and it has not argued the award of fees would cause an extreme hardship. The Court does not believe a fee award in this case would stifle litigation of

---

above factors are met "could well undermine the statute by discouraging meritorious litigants from establishing their 'just claim.'" *Id.*

[20] Mr. Maxwell cites *ARA Inc. v. City of Glendale*, 360 F. Supp. 3d 957 (D. Ariz. 2019), because in that case, the court denied fees because even if it considered one party the successful party after denying cross-motions for summary judgment on all but one claim, the partial victory did not "reduce the potential liability" that party still faced. *Id.* at 971. The procedural postures of the case herein and the cited case are vastly different, and WVL's argument is not persuasive.

10

Case 19-05110   Doc# 143   Filed 01/19/21   Page 10 of 14

legitimate contract issues, especially considering the Court's decision centered on viable defenses to contract claims. The Court concludes that a fee award would encourage, not discourage, parties from litigating tenable defenses. According to the Arizona Supreme Court, the purposes of § 12–341.01(A) are three-fold:

> (1) mitigating the burden of the expense of litigation to establish a just claim or a just defense; (2) encouraging more careful analysis prior to filing suit by imposing the risk of paying the opposing party's attorneys' fees where legitimate settlement offers are rejected; and (3) promoting settlement and thus reducing caseloads involving contractual matters.[21]

The Court concludes that awarding fees to Mr. Maxwell aligns with these goals, and therefore grants Mr. Maxwell's request for attorney's fees under § 12-341.01.

Mr. Maxwell has filed an exhibit with the Court with his counsel's standard billing rate,[22] and in line with guidance from case law interpreting Arizona statute § 12-341.01, the Court begins its fee award with that rate.[23]

---

[21] *Am. Power Prod., Inc. v. CSK Auto, Inc.*, 396 P.3d 600, 605 (Ariz. 2017) (internal quotations omitted).
[22] Doc. 136, Exh. 1.
[23] *Design Trend Int'l Interiors, Ltd. v. Cathay Enters., Inc.*, 103 F. Supp. 3d 1051, 1064 (D. Ariz. 2015) ("In determining reasonable attorneys' fees in commercial litigation, the beginning point of a reasonable fee is the . . . actual billing rate which the lawyer charged in the particular matter. Unlike public-rights litigation[,] in corporate and commercial litigation between fee-paying clients, there is no need to determine the reasonable hourly rate prevailing in the community for similar work because the rate charged by the lawyer to the client is the best

Mr. Maxwell's exhibit also includes an itemized statement of time spent defending the breach of contract action.[24] As detailed above, the complaint was originally filed in Arizona state court and removed to this Court. Significant early litigation occurred concerning the motion to remand and this Court's jurisdiction. WVL began discovery, and the motion to dismiss was not fully briefed for eleven months after it was filed—and that briefing required a sur-reply and a response thereto. Total fees requested are $44,944.50, with costs of $390.13.

The Court has reviewed the itemization to determine whether the hours claimed are justified, but WVL has not had the opportunity to do so. First, Mr. Maxwell shall file, within twenty-one days, a supplemental statement of the total amounts billed and total hours billed by each biller. Also within twenty-one days, WVL should review Mr. Maxwell's itemized fee request and notify Mr. Maxwell's counsel if it intends to raise any specific

---

indication of what is reasonable under the circumstances of the particular case." (internal quotations and alterations omitted)); *see also Schweiger*, 673 P.2d at 932 ("The court, of course, is not bound by the agreement between the parties. While it is unlikely that the court will adjust the hourly rate upward, upon the presentation of an opposing affidavit setting forth reasons why the hourly billing rate is unreasonable, the court may utilize a lesser rate.").

[24] *See Schweiger*, 673 P.2d at 932-33 (detailing the steps courts should take when determining a reasonable fee award and noting that a successful party "is entitled to recover a reasonable attorney's fee for every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest" (internal quotation omitted)).

challenges to the itemization. If, after discussion, the parties cannot agree on the proper amount, then WVL should file a notice with this Court specifically stating what particular line items are challenged. Such notice shall be filed within forty-two days of the date of this Order. Mr. Maxwell may file a response within fourteen days of such notice by WVL. No replies will be permitted. The Court will then review the matter and award a reasonable fee. If the parties do agree to a reasonable fee award without this Court's intervention within the above-mentioned forty-two-day time frame, then Mr. Maxwell should submit an agreed order laying out the particulars of that agreement for this Court's signature.

### III. Conclusion

Mr. Maxwell's motion for attorney's fees under § 12-341.01 is granted. Mr. Maxwell alternatively moved for attorney's fees under Arizona statute § 12-349 (attorney's fees for "unjustified actions"). Because the Court awards fees under § 12-341.01, it need not analyze § 12-349.

Mr. Maxwell should, within twenty-one days, file a supplemental statement of the total amounts billed and total hours billed by each biller. WVL should, within twenty-one days, review Mr. Maxwell's fee request and notify Mr. Maxwell's counsel if it intends to raise any specific challenges to the itemization. If, after discussion, the parties cannot agree on the proper

amount, then WVL should file a notice with this Court specifically stating what particular line items are challenged. Such notice shall be filed within forty-two days of the date of this Order. Mr. Maxwell may file a response within fourteen days of such notice by WVL. No replies will be permitted.

If the parties agree to a reasonable fee award, they should submit an agreed order to the Court within forty-two days of the date of this Order setting out the particulars of their agreement.

**It is so Ordered**.

# # #